Filed 5/15/13  Tract 19051 HOA v. Kemp CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TRACT 19051 HOMEOWNERS ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MAURICE KEMP et al., <br><br> Defendants and Respondents. | B235015 <br><br> (Los Angeles County <br> Super. Ct. No. BC398978) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard L. Fruin, Judge.  Affirmed in part; reversed in part.

Law Office of Mifflin & Associates and Ken Mifflin for Plaintiffs and Appellants.

Robert L. Jones, in pro. per., for Plaintiff and Appellant.

No response for Defendant and Respondent Maurice Kemp.

Turner Law Firm and Keith J. Turner for Defendant and Respondent Eric Yeldell.

A homeowners association and numerous homeowners (plaintiffs) sued to halt defendant homeowners' remodeling construction for alleged violations of the subdivision's declaration of restrictions (declaration or DOR's). During a court trial, the main issue was whether the declaration, which had a January 1, 2000 expiration date, was properly renewed by a majority of homeowners in 1999. The answer turned on whether the subdivision is a "common interest development" under the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.) (Act), such that the majority's renewal of the declaration was permitted by Civil Code section 1357.[1] The trial court found that because the subdivision is not a common interest development, section 1357 did not apply and the majority's renewal of the declaration was ineffectual. Because the declaration had expired, the court entered judgment for defendant homeowners, who recovered costs and attorney fees under section 1354.

In this appeal by plaintiffs,[2] we affirm the judgment for defendants, but reverse the award of attorney fees under section 1354. (*Mount Olympus Property Owners Assn. v.*

---

[1]     All further undesignated statutory references are to the Civil Code.

[2]     Although the notice of appeal was filed on behalf of all plaintiffs—the homeowners association and owners of 52 lots listed in the judgment—the number of appellants has since declined. Appellants presently consist of the homeowners association and owners of 21 lots.

The appellants are: (1) Tract 19051 Homeowners Association, also known as Cloverdale, Terraza, Stillwater, Weatherford Homeowners Association; (2) Robert L. Jones and Kaidi Jones; (3) David Winston and Brenda L. Winston; (4) Steven Burr and LaDonna Burr; (5) Sergio Bent; (6) Judy Pace; (7) Quinton James and Marcia James; (8) Carl Potts and Elaine Potts; (9) Ruth Turner; (10) Charles Dotts and Victoria Franklin Dotts; (11) Charles Stewart; (12) John W. Harris; (13) David Chaney; (14) Rodney W. Collins; (15) Earnestine Jeffries; (16) Gloria Potts; (17) Ron Smothers and Barbara Bass; (18) Greg McNair and Margaret McNair; (19) Ryan Jones and Lynn Jones; (20) Alfred Brazil; (21) Valerie J. Tutson; and (22) Frank Williams, Jr.

Dismissals of the appeal were filed by the owners of 31 lots: (1) Pat Lang; (2) Kenneth Mifflin and Doris Evans Mifflin; (3) Dexter Nitta and Lynn Nitta; (4) Edward Butts and Diana J. Butts; (5) Cori Grayson and Gene Grayson; (6) Marjorie Garrison; (7) J.S. Lehman; (8) Fred Calloway and Eugenia Calloway; (9) G.B. Kynard; (10) Diane Island; (11) Marcia Brewer; (12) Eugene Collier and Dorothy Collier;

(Fn. continued.)

2

*Shpirt* (1997) 59 Cal.App.4th 885, 895-896 (*Mount Olympus*) [because the Act did not apply, the trial court erred in awarding attorney fees under § 1354].)

## PREFACE

In order to place the facts in their proper context, we begin by noting that a declaration of restrictions may be extended (1) by the unanimous vote of 100 percent of the property owners; (2) by the vote of a lesser number of owners as provided in the declaration; or (3) in common interest developments only, by compliance with specified statutory procedures. (See 8 Miller & Starr, Cal. Real Estate (3d ed. 2009) § 24:41, p. 24-136.) It is undisputed that the first two methods of extending a declaration are inapplicable to this case. As to the third method, the parties agree that the sole statutory procedure that applies, if at all, is found in section 1357.

Plaintiffs' case hinges on section 1357, which applies only to common interest developments. Section 1357 states that if a declaration for a common interest development does "not provide a means for the property owners to extend the term of the declaration," the term can be extended "if owners having more than 50 percent of the votes in the association choose to do so." (§ 1357, subd. (a).)

In order for section 1357's voting procedure to apply, plaintiffs must prove that their subdivision, Tract 19051, is a common interest development. According to section 1352, "a common interest development is created whenever a separate interest coupled with an interest in the common area or membership in the association is, or has been, conveyed, provided, all of the following are recorded: [¶] (a) A declaration. [¶] (b) A

_____

(13) Jessie Ford; (14) Iona V. Goodall; (15) Frank E. Phillips; (16) Cora King; (17) Wallace R. Vernoff; (18) Tracy Lewis; (19) Jorge deNeve; (20) Delphine Mablish; (21) Bridgett Benmosche; (22) Michael Thomas; (23) Floy Sims; (24) Reginald Dunn; (25) Kevin Jackson; (26) Jackie Kimbrough; (27) Albert Mayfield and Gailya Mayfield; (28) Herbert Patterson; (29) Dawn Sutherland; (30) Carl Christopher and Bobby Christopher; and (31) Jamie Simpson. We deem all of them dismissed from this appeal.

condominium plan, if any exists. [¶] (c) A final map or parcel map, if Division 2 (commencing with Section 66410) of Title 7 of the Government Code requires the recording of either a final map or parcel map for the common interest development."

The parties agree that of the several types of common interest developments that exist, the planned development is the only type that arguably applies to Tract 19051. (§ 1351, subd. (c).) A planned development is "a development (other than a community apartment project, a condominium project, or a stock cooperative) having either or both of the following features: [¶] (1) The common area is owned either by an association or in common by the owners of the separate interests who possess appurtenant rights to the beneficial use and enjoyment of the common area. [¶] (2) A power exists in the association to enforce an obligation of an owner of a separate interest with respect to the beneficial use and enjoyment of the common area by means of an assessment which may become a lien upon the separate interests in accordance with Section 1367 or 1367.1." (§ 1351, subd. (k).) A separate interest in a planned development "means a separately owned lot, parcel, area, or space." (§ 1351, subd. (*l*)(3).)

In order for plaintiffs to demonstrate that Tract 19051 is a planned development, they must establish the existence of a common area. If there is no common area, Tract 19051 is not a common interest development and none of the Act's provisions, including section 1357's statutory voting procedure, applies. Section 1374 provides: "Nothing in this title may be construed to apply to a development wherein there does not exist a common area as defined in subdivision (b) of Section 1351."

As will be discussed, the primary difficulty faced by plaintiffs at trial was that Tract 19051 has no obvious common areas. There are no commonly owned or maintained roads, trails, bike lanes, landscaping, fencing, lighting, pools, tennis courts, clubhouses, or other amenities. In light of this difficulty, plaintiffs sought to establish the existence of a common area based on the statutory definition that "the common area for a planned development specified in paragraph (2) of subdivision (k) may consist of mutual or reciprocal easement rights appurtenant to the separate interests." (§ 1351, subd. (b).)

4

## FACTS AND PROCEDURAL BACKGROUND

Tract 19051 is a subdivision of 94 single family homes in the Baldwin Vista area of Los Angeles. It has a voluntary homeowners association—"Tract 19051 Homeowners Association a.k.a. Cloverdale, Terraza, Stillwater, Weatherford Homeowners Association" (Association)—that is open to homeowners in and around Tract 19051 (according to the respondent's brief, "Stillwater and Weatherford Streets are not in Tract 19051").

When Tract 19051 was subdivided in 1958, the developer recorded the declaration of restrictions that is the subject of this litigation. Although the declaration allowed any homeowner to sue to enforce its restrictions, the declaration expired by its own terms on January 1, 2000, and contained no provision for extending that date.[3]

In 2006, defendant Maurice Kemp acquired lot 22 of Tract 19051, which has a street address of 4085 Cloverdale. Lot 22 contained a single story residence that Kemp essentially demolished in order to build a much larger 7,000 square foot two-story home. After construction began, the attorney for a fellow homeowner informed Kemp that the remodeling project was in violation of the height and setback restrictions contained in the DOR's.

In September 2008, Kemp was sued by the Association and the owners of 32 lots (plaintiffs) for breach of the DOR's, nuisance, injunctive relief, and declaratory relief. Plaintiffs sought a temporary restraining order (TRO) to halt the remodeling project. In opposition, defense attorney Keith Turner argued the DOR's had expired by its own terms on January 1, 2000. Plaintiffs countered that a majority of homeowners had voted

---

[3] The DOR's stated in relevant part: "Each and all of the conditions herein contained shall in all respects terminate and end and be of no further effect, either legal or equitable, either on said property or any part thereof, or on the parties thereto, their heirs, successors, devisees, executors, administrators or assigns, on or after January 1, of the year 2000."

5

in December 1999 to extend the DOR's to December 31, 2010.[4] The trial court (Judge David P. Yaffe) denied the TRO after noting that only 32 of the 94 homeowners were seeking relief as plaintiffs.

After 48 of the 94 homeowners filed an amended complaint, which was later increased to 52 of 94 homeowners, plaintiffs requested a preliminary injunction to halt the remodeling project.[5] The trial court (Judge Yaffe) denied the preliminary injunction on January 6, 2009. The court stated in relevant part: "An amendment to the declaration of restrictions was made on December 29, 1999, that purports to extend the force and effect of the declaration of restrictions to December 31, 2010. The amendment recites that it is agreed to by, 'at least 50 percent, plus one, of the total voting power of the members. . . .' [¶] Plaintiffs contend that the amendment is sufficient to extend the term of the declaration of restrictions under section 1355 of the Civil Code, a portion of the Davis-Stirling Common Interest Development Act. The contention is without merit because Tract 19051 is not a common interest development, and therefore the Davis-Stirling Act has nothing to do with it. Tract 19051 is a tract of individually owned single family residences that border upon streets that are dedicated to the public and are not owned in common by the homeowners or by the homeowners' association." As to the statutory requirements of a common interest development, the trial court found no evidence that the tract had any common areas, that membership in the Association had

---

[4]     According to the amended judgment, "[p]laintiff MARCIA BREWER recorded a document entitled CERTIFICATION OF AMENDMENT TO DECLARATION OF RESTRICTIONS AND AMENDMENT TO DECLARATION OF RESTRICTIONS, which purported to extend the DORs to December 31, 2010."

[5]     On December 11, 2008, the court added four plaintiffs to the amended complaint, bringing the total number of homeowner plaintiffs to 52.
        The amended complaint added Douglas Higgins, who was Kemp's contractor, as a defendant. According to plaintiffs' opening brief, Higgins died before trial. Although plaintiffs continue to refer to Higgins as a defendant, there is no indication that either the executor of his estate or his personal representative has appeared in this litigation.

6

been conveyed to the homeowners, or that the Association was authorized to collect assessments and impose liens.

Before the case was tried, Kemp defaulted on his construction loan and the lender recorded a notice of default on February 3, 2009. In light of the impending foreclosure sale, Kemp ceased defending this action and his attorney was allowed to withdraw from the case on August 12, 2009.

The court (Judge Richard L. Fruin) conducted a bench trial on January 25 and 28, 2010. Kemp, who was on the verge of losing his property, did not appear at trial. Plaintiffs, who appeared through their attorneys Marcia J. Brewer and Ken Mifflin (who are plaintiffs but not appellants in this action), provided documentary evidence and testimony in support of their claim that Kemp's home was being enlarged in violation of the height and setback restrictions in the declaration, which a majority of homeowners had extended to December 31, 2010.

At the conclusion of trial, the court entered an interlocutory judgment for plaintiffs, who were granted $112,000 in attorney fees and costs under section 1354.[6] Because the DOR's were scheduled to expire on December 31, 2010, the trial court

---

[6]    Subdivision (a) of section 1354 provides: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both."

Subdivision (c) of section 1354 provides: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs."

The term "declaration" as used in section 1354 is defined as "the document, however denominated, which contains the information required by Section 1353." (§ 1351, subd. (h).) Section 1353, subdivision (a)(1) provides: "A declaration, recorded on or after January 1, 1986, shall contain a legal description of the common interest development, and a statement that the common interest development is a community apartment project, condominium project, planned development, stock cooperative, or combination thereof. The declaration shall additionally set forth the name of the association and the restrictions on the use or enjoyment of any portion of the common interest development that are intended to be enforceable equitable servitudes. . . ."

7

continued the matter in order for plaintiffs to show that the DOR's would be extended beyond that date.

In March 2010, defendant Eric Yeldell purchased Kemp's home at a trustee's foreclosure sale. In August 2010, a majority of homeowners voted to extend the DOR's to December 31, 2030.

In October 2010, Yeldell moved to intervene as a defendant and vacate the interlocutory judgment on the ground that the DOR's had expired in January 2000 and were therefore unenforceable. The trial court granted Yeldell's motion to intervene on December 3, 2010. It issued an order to show cause and requested further briefing on whether "to: (1) vacate the Interlocutory Judgment; (2) whether to enter judgment against plaintiffs on the evidence already presented; and (3) whether to hold a further evidentiary hearing to receive new evidence that may be offered in support of Plaintiffs' claims."

At a February 10, 2011 evidentiary hearing, Yeldell was represented by Kemp's former attorney Turner. Yeldell argued that because the development did not qualify as a common interest development under the Act, section 1357 did not apply and the vote by a majority of homeowners to extend the DOR's to December 31, 2010, was ineffectual. The parties litigated the following issues:

The 1946 Grant Deed. Plaintiffs argued that a newly discovered 1946 grant deed had created a common area by providing an "express permanent easement over Parcel No. 1 of the development that is appurtenant to the separate interests of the owners therein for use as a means of ingress and egress to and from the neighboring park."[7]

---

[7] In his declaration, plaintiffs' attorney Ken Mifflin explained that "[s]everal weeks before the evidentiary hearing, I sent the subdivision map to Fidelity Title Company to see if they could assist in locating any easements in favor of Tract 19051 . . . . They were unable to find anything. [¶] . . . On or about January 5, 2011, I went to Norwalk to search the grantor/grantee index files for conveyances from the Baldwin Hills Company to the City of Los Angeles that reserved any easement rights to the grantor. I was unable to find anything. [¶] . . . On or about January 20, 2011[,] I went back to Norwalk to the County Records office to see if I could find the deed that referenced the subdivision map

(Fn. continued.)

8

However, Yeldell's evidence showed that Parcel No. 1 is not in Tract 19051, but in the state park that abuts Tract 19051.  Plaintiffs did not refute Yeldell's evidence.  Accordingly, plaintiffs conceded that they were attempting to show the existence of a common area based on an easement that runs from the edge of Tract 19051 through the Kenneth Hahn State Park and does not burden any property within the tract.

The Subdivision Map.  Plaintiffs argued that the subdivision map for Tract 19051 had created a common area by depicting public streets and utility easements, which they claimed were mutual or reciprocal easements that are appurtenant to the separate interests and necessary to the use and enjoyment of each lot.  Yeldell disagreed.  Yeldell argued that public streets and utility easements do not create mutual or reciprocal easements that are appurtenant to the separate interests of the property owners.

The Association's Powers to Assess and Levy.  Under section 1351, subdivision (k)(2), one indication of a planned development is the Association's power "to enforce an obligation of an owner of a separate interest with respect to the beneficial use and enjoyment of the common area by means of an assessment which may become a lien upon the separate interests in accordance with Section 1367 or 1367.1."  In support of their contention that Tract 19051 is a planned development, plaintiffs pointed out that the Association was authorized by its bylaws to assess and collect dues and levy special assessments to meet any unanticipated needs.  Yeldell argued that this was insufficient to show that Tract 19051 is a planned development.  Yeldell asserted that in a planned development, any conveyance of the owner's entire estate also includes the owner's membership interest in the association.  (§§ 1352, 1358, subd. (c).)  In this case, however, there was no evidence that membership in the Association, which was purely voluntary, was transferred with the sale of any of the lots in the tract.

At the conclusion of trial, the court found that plaintiffs had failed to show that Tract 19051 is a planned development.  Accordingly, the court held that the majority

that I observed by use of a magnifying instrument.  With the assistance of an employee, I located that attached deed (Exhibit C)."

9

homeowners' attempts to extend the DOR's under section 1357 were ineffectual. Because the DOR's had expired and were unenforceable, the trial court vacated the interlocutory judgment for plaintiffs and entered judgment for defendants. The trial court awarded defendants costs under Code of Civil Procedure sections 1032 and 1033.5, plus attorney fees under section 1354. We consolidated plaintiffs' separate appeals from the judgment (B235015) and attorney fee award (B239588).

## DISCUSSION

Plaintiffs contend: (1) "Tract 19051 is a common interest development under the Davis-Sterling Act because the owners in the development possess appurtenant easement rights to a portion of the development and an association with authority to enforce the DORS"; and (2) "Even if the court affirms the judgment that the Davis-Sterling Act does not apply, the award of attorneys' fees should be reversed because there is no basis for recovery of attorney's fees."

## I. Tract 19051 Is Not a Common Interest Development

Plaintiffs contend the undisputed evidence shows that, as a matter of law, Tract 19051 is a planned development. We conclude the contention lacks merit.

In *Mount Olympus*, *supra*, 59 Cal.App.4th 885, we stated that in order for "a development to fall within the governance of the Act, the statutory requirements are clear: (1) there must exist a common area owned either by the association or 'by the owners of the separate interests who possess appurtenant rights to the beneficial use and enjoyment of the common area' (Civ. Code, §§ 1351, subd. (k)(1), 1374); (2) there must have been recorded '[a] declaration,' '[a] condominium plan, if any exists,' and '[a] final map or parcel map' (*id.*, § 1352); and (3) there must have been conveyed 'a separate interest coupled with an interest in the common area or membership in the association' (*ibid.*)." (*Id.* at pp. 895-896.)

10

As previously mentioned, plaintiffs sought to establish the existence of a common area based on the statutory definition that "the common area for a planned development specified in paragraph (2) of subdivision (k) may consist of mutual or reciprocal easement rights appurtenant to the separate interests." (§ 1351, subd. (b).) In order to show the existence of "mutual or reciprocal easement rights appurtenant to the separate interests" (*ibid.*), plaintiffs relied on (1) a roadway easement outside Tract 19051, and (2) public roads and utility easements within Tract 19051.

We conclude that the roadway easement outside Tract 19051 fails to establish the existence of a common area. As stated in *Comm. to Save the Beverly Highlands Homes Ass'n v. Beverly Highlands Homes Ass'n* (2001) 92 Cal.App.4th 1247, "there must be, at a minimum, appurtenant easement rights to a portion of the development." (*Id.* at p. 1271.) Because the roadway easement lies outside the development, it does not create any "appurtenant easement rights to a portion of the development." (*Ibid.*)

Plaintiffs have cited no authority for the proposition that public streets create "mutual or reciprocal easement rights appurtenant to the separate interests." (§ 1351, subd. (b).) The fact that property owners have a right of ingress and egress over the city streets abutting their lots does not transform the municipality's roads into a common area for purposes of the Act. There was no evidence that any of the plaintiffs treated the public streets as a common area that was to be maintained by the Association. Although there are no cases that have decided this question, we agree with the view expressed by one commentator: "The often subtle but important distinction between a common interest development and a standard subdivision involves the manner in which common roads, recreational lots and other facilities are held by the owners of interests in a subdivision. If a subdivision includes only public streets and no common areas, it is a standard subdivision." (9 Miller & Starr, Cal. Real Estate (3d ed. 2007) § 25C:8, p. 25C-30.)

We similarly conclude that the homeowners in Tract 19051 have no appurtenant easement rights to the utility easements, which are for the benefit of the utility. (See, e.g., *Uniwill v. City of Los Angeles* (2004) 124 Cal.App.4th 537, 544 [easement granted the

11

utility the exclusive right to occupy the property].)  Even though the utilities provide water, gas, and electrical services that are necessary for the use and enjoyment of the homes in the subdivision, the homeowners do not have appurtenant easement rights to the utility easements.

Given the lack of any evidence of a common area, the Association's authority to assess and collect dues and levy special assessments to meet any unanticipated needs is insufficient to show that Tract 19051 is a planned development.  A similar situation existed in *Mount Olympus*, *supra*, 59 Cal.App.4th at page 895, where, as here, there was no evidence that membership in the homeowners association was transferred with the sale of any of the lots in the tract.  (§§ 1352, 1358, subd. (c).)  In that case, the homeowners association (MOPOA) owned and maintained two small plots of land on which a sign was displayed.  In rejecting MOPOA's argument that the two small plots constituted a common area within the meaning of the Act, we stated that the association "did not establish that a 'separate interest coupled with an interest in the common area or membership in the association' had been conveyed.  Indeed, it is clear from testimony at trial that there was no mandatory membership in MOPOA, and that it was a purely voluntary association of homeowners with no power to charge or collect assessments." (*Ibid*.)  The same reasoning is equally applicable to this case.[8]

## II.     Defendants Are Not Entitled to Attorney Fees Under Section 1354

Plaintiffs contend that if we determine that Tract 19051 is not a common interest development, the award of attorney fees under section 1354 must be reversed because the Act does not apply.  The contention is well taken.  In *Mount Olympus*, *supra*, 59 Cal.App.4th at pages 895-896, we found that because the Act did not apply, the trial court had erred in awarding attorney fees under section 1354.  (See 12 Miller & Starr, Cal. Real Estate (3d ed. 2008) § 34:66, p. 34-229 ["If the property described in the restrictions is

---

[8]     Yeldell filed a motion seeking leave to produce additional evidence.  The request is denied.

12

not a 'common interest development,' this provision for the award of fees does not apply."].) Because the same rationale applies to this case, the attorney fee award under section 1354 must be reversed.

## DISPOSITION

The order awarding plaintiffs' attorney fees under section 1354 is reversed. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

SUZUKAWA, J.

We concur:


WILLHITE, Acting P. J.


MANELLA, J.

13